[760 NYS2d 415]

In the Matter of DONALD ROSENKRANTZ, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 1, 2003

## APPEARANCES OF COUNSEL

*Vitaly Lipansky* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

No appearance for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Donald Rosenkrantz, who appears in this matter

pro se, was admitted to the practice of law in the State of New York by the First Judicial Department on June 27, 1966 and, at all times relevant to this proceeding, has maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee (the Committee) now seeks an order, pursuant to 22 NYCRR 603.4 (d) and 605.15 (e), confirming the determination of the Hearing Panel, and suspending respondent from the practice of law for one year. Respondent cross-moves for an order disaffirming both the findings of the Referee and the determination of the Hearing Panel to the extent that they recommend a suspension, asserting that public censure is the more appropriate sanction in view of the evidence in mitigation.

Respondent was served, on or about November 19, 2001, with a notice and statement of charges alleging 21 violations of the lawyers' Code of Professional Responsibility. Respondent was charged with neglecting nine matters in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30), misleading clients as to the status of their cases in two of those matters, in violation of DR 1-102 (a) (4) (22 NYCRR 1200.3), failing to enter into required written retainers and provide clients with a statement of their rights in three separate instances, in violation of DR 2-106 (c) (2) (b) (22 NYCRR 1200.11 [c] [2] [ii]) and DR 2-105-a (22 NYCRR 1200.10-a),* failing to satisfy two personal judgments against him in violation of DR 1-102 (a) (5), and engaging in conduct which adversely reflected upon his fitness as a lawyer, in violation of DR 1-102 (a) (7). In an undated answer, respondent admitted some factual allegations, denied others, and denied liability as to the charges.

A hearing was held before a Referee on January 18 and 22, and February 1, 2002, at the commencement of which the Referee granted staff counsel's motion to withdraw two of the charges based upon recently submitted evidence. In a report dated April 1, 2002, the Referee outlined the charges filed against respondent. Charge 1 asserted that respondent neglected a legal matter in violation of DR 6-101 (a) (3) in that respondent failed to provide a bill of particulars in a property damage suit for almost three years and had still failed to conclude the case when the within disciplinary charges were filed, approximately 10 years after the case was commenced. The second charge, involving the same client, alleged that re-

* This section has been recodified as DR 2-106 (f).

spondent failed to enter a judgment with the Clerk of the Court until almost five years had passed from the entry of the order.

Charge 3 related to the representation by respondent of a client retained through a legal referral service in order to obtain a divorce. Despite the fact that the husband defaulted, respondent did not move for a default judgment for three years and then failed to appear for the scheduled inquest, which resulted in the dismissal of the case. Although the court, on respondent's motion, restored the case three months later, and granted a judgment of divorce subject to respondent's submission of findings of fact, conclusions of law and a proposed judgment of divorce within 60 days, the case was still open one and one-half years later. Charges 4 and 5, which alleged that respondent failed to enter into a written retainer agreement and provide his client with a client's statement of rights, were withdrawn after respondent located copies of these documents in his files.

Charges 6 and 7 asserted that respondent, retained by his client through the same legal referral service in order to secure a divorce, neglected to move for a default judgment within one year of the husband's default, as set forth in CPLR 3215, and the case was marked off the calendar. Respondent also failed to produce a written retainer agreement for this client.

Charges 8, 9 and 10 alleged that respondent was again retained by a client through a legal referral service in order to obtain a divorce. The client testified that he made repeated efforts to contact respondent, without much success, between May 1999 and May 2001, and was eventually informed by respondent that he was awaiting a judgment in the case. Respondent, however, had not filed the papers necessary to obtain a default judgment, although he denied informing the client that a default judgment was pending. Respondent also failed to produce a written retainer agreement in this matter.

Charges 11 through 14 asserted that respondent was retained in February 1997 by a client through a legal referral service to obtain a divorce and despite the fact that he commenced the action in April 1998, he did not move the action forward until sometime in the summer of 2001. Although respondent explained to his client that there was a backlog in the court system, the court shortly thereafter sua sponte dismissed the case for neglect of prosecution. Charge 11 charged respondent with engaging in conduct involving dishonesty, fraud, deceit or misrepresentation by falsely advising his

client that her case was backlogged; charge 12 charged respondent with neglect; charge 13 stated that respondent failed to enter into a written retainer agreement; and charge 14 charged respondent with failing to provide his client with a statement of client's rights and responsibilities.

Charge 15 charged respondent with neglect of a legal matter, charge 16 with failing to enter into a written retainer agreement and charge 17 with failing to provide his client with a statement of client's rights and responsibilities. These charges arose out of respondent's retention by a client to obtain a share of her husband's pension. The parties subsequently settled their differences and respondent represented both of them for the limited purpose of filing a New Jersey domestic relations order (DRO) to take effect on the New York-based pension plan. Respondent, however, waited almost three years before filing the DRO.

Charge 18 charged respondent with neglect of a matter where respondent delayed more than two years without attempting to obtain funds due his client pursuant to a stipulation of settlement entered into in an action for damages. Charge 19 also charged respondent with neglect of a personal injury matter where respondent failed to comply with discovery demands, including a conditional order of the court, over a three-year period. Charge 20 charged respondent with failing to satisfy two judgments entered against him by the owner of a transcription/reporting company in October 1999. Finally, charge 21 alleged that all of the foregoing conduct adversely reflected on respondent's fitness as a lawyer.

The Referee, at the conclusion of the liability stage of the hearing, sustained 15 of the remaining 19 charges, noting that respondent's misrepresentations of the status of two of his cases was "for his own self-protection," that although he spoke of overwhelming financial pressure, he never asserted that he was unable to pay the transcription services and, while respondent "seems sincere in his commitment to his clients, the gaps in delivery of needed services are very apparent." In not sustaining charges 7, 10, 13 and 16, which alleged that respondent had failed to enter into written retainer agreements with three clients in domestic relations matters, the Referee concluded that respondent was not required to enter into such agreements because he did not receive a retainer fee directly from these clients, rather, he was paid by various legal referral plans of which these clients were members.

The Referee, during the sanction branch of the hearing, admitted into evidence an admonition issued to respondent by

the Committee on April 30, 1996, for improperly threatening an opposing litigant with criminal prosecution in order to gain an advantage in a civil matter (DR 7-105 [22 NYCRR 1200.36]). In mitigation, respondent, who has essentially been a solo practitioner since his admission in 1966, asserted that in neglecting nine clients, the end result was inconvenience, and no harm. Further, two of respondent's clients testified that respondent represented them even though he was aware they could not afford to pay his fee.

Respondent also introduced evidence that he suffered from medical, personal and financial problems during some of the period over which the misconduct occurred, and that he had taken steps to conclude some of the cases he neglected and had, in fact, concluded a few of them. Respondent further submitted a letter from his treating psychiatrist, Dr. Makari, outlining "intermittent Major Depressive episodes" which have afflicted respondent since at least 1993. Dr. Makari also averred that respondent is currently "moderately depressed" and is taking four medications, a "testament" to the difficulty of his depressive disorder. Dr. Makari concluded that notwithstanding his afflictions, respondent is committed, honest and trustworthy and that the loss of his ability to practice law "would be an emotional and financial catastrophe."

The Referee found that respondent clearly showed remorse and had fully cooperated with the Committee and concluded that the Committee staff's recommendation that respondent be suspended for not less than one year to be too severe. Rather, based upon the "compelling mitigating evidence," the Referee recommended a suspension of six months.

The Hearing Panel (the Panel) recommended partially confirming the Referee's findings as to liability and suggested a modified sanction of a one-year suspension. The Panel disagreed with the Referee's findings that written retainer agreements in domestic relations matters are not required when the fee is paid by a third party referral service, and concluded, therefore, that charges 7, 10, 13 and 16 should have been sustained. The Panel, with regard to mitigation, also disagreed with the Referee regarding respondent's view that he had only inconvenienced his clients.

Initially, we find that the Panel's findings of fact, and conclusions of law, including sustaining the four charges dismissed by the Referee (DR 2-106 [c] [2] [b] [failure to enter into written retainer agreements]) should be confirmed as amply supported by the record. With regard to the appropriate sanction

to be imposed, we cannot ignore a pattern of neglect involving nine matters, some for substantial periods of time, as well as the prior admonition by the Committee. We take into consideration, however, respondent's difficult financial situation, his cooperation with the Committee, the fact that he admitted most of his conduct and did not act with venal intent, his extended struggle with depression, an unwanted divorce, and the reorganization of his solo practice, which included a reduction in his heavy caseload. In view of all of the foregoing, and bearing in mind that a period of suspension is appropriate for an attorney who has a previous disciplinary record and who has seriously neglected several matters (*see Matter of Chasin*, 183 AD2d 366 [1992]; *Matter of Jaffe*, 250 AD2d 13 [1998]), we find a six-month suspension to be an appropriate sanction.

Accordingly, the Committee's motion should be granted to the extent of confirming the Panel's findings of fact and conclusions of law, but we modify the recommended sanction to impose a six-month suspension. Respondent's cross motion should be denied.

NARDELLI, J.P., ANDRIAS, SAXE, ELLERIN and LERNER, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of six months, effective June 2, 2003, as indicated.