OPINION OF THE COURT
Per Curiam.
Respondent Bradley A. Alperin was admitted to the practice of law in New York by the Appellate Division, Second Judicial Department on November 27, 1996 under the name Bradley Adam Alperin. At all times relevant to this matter, respondent practiced law in the First Judicial Department.
The Departmental Disciplinary Committee seeks an order confirming findings of fact and conclusions of law by the Referee and Hearing Panel and disaffirming the recommended sanction of six months’ suspension and instead suspending respondent from the practice of law for a period of two years (22 NYCRR 603.4 [d]; 605.15 [e] [2]). The motion is predicated on findings that respondent engaged in a pervasive pattern of misconduct by deceiving his firm and four of its clients concerning work that he completely failed to perform in regard to five separate cases (Code of Professional Responsibility DR 1-102 [a] [4] [22 NYCRR 1200.3 (a) (4)]), as well as neglecting those five cases (DR 6-101 [a] [3] [22 NYCRR 1200.30 (a) (3)]). As a consequence, respondent was also found to have engaged in conduct that adversely reflects upon his fitness as a lawyer (DR 1-102 [a] [7]). Respondent cross-moves to disaffirm so much of the Hearing Panel’s report as recommends a six-month suspension and substitute therefor a sanction of public censure or, alternatively, a three-month suspension.
By his answer and prehearing stipulation of facts, respondent has conceded virtually all of the factual allegations and admitted liability to all of the charges against him. As a result, the sole issue before us is the sanction to be imposed.
The charges, respondent’s admissions and his subsequent testimony indicate that he engaged in a pattern of deception to conceal his neglect of matters assigned to him. Two matters in which respondent acted on behalf of Merrill Lynch Business Financial Services Inc. are illustrative. In one case, he completed a motion for a judgment on a defaulted business loan but failed to file it with Supreme Court, New York County. In response to the client’s March 2006 inquiry into the status of the matter, respondent stated that he was awaiting a decision on the submitted motion and would “follow up with the court this week to see when we can expect a decision and/or request a conference with the judge to find out what is taking so long.” *311 Respondent’s failure to keep the client informed prompted another inquiry in June 2006 as to whether the default judgment had been signed by the court, to which respondent replied that he would “send one of [the firm’s] clerks to court to double check the court file.” Thereafter, respondent personally discovered that the court had no record of the motion but concealed this fact from the client in a subsequent conversation, stating only that there was a “problem” with the default motion. Meanwhile, he misrepresented to the supervising partner at his firm that the case was proceeding regularly.
In the second matter, respondent was again assigned to obtain a default judgment against a debtor who likewise had defaulted on a business loan. Respondent prepared judgment enforcement documents in mid-2005 and, although he never served them on the defendant, submitted false billing records to the firm reflecting such service. Further, his hand-written billing entries referred to time devoted to a motion to compel defendant to comply with subpoenas or be held in contempt, a motion that respondent obviously never drafted, as well as time expended for “checking” the status of this nonexistent motion. Based upon these false entries from May through November 2005, respondent’s firm unwittingly billed Merrill Lynch for work that was never performed.
In a third matter, respondent was assigned six arbitration claims in January 2004 to be brought before the National Association of Securities Dealers (NASD) on behalf of Morgan Stanley against six of its former brokers. Respondent prepared the necessary statements of claim, but attempted neither to obtain approval of the claims from Morgan Stanley nor to file them with the NASD. Respondent compounded his misconduct by sending four status reports to Morgan Stanley, between early April and mid-August 2006, in which he misrepresented that he was awaiting its approval of the statements of claim, that they had been filed with the NASD and that he was awaiting confirmation of service from the NASD.
A fourth matter, involving the collection of $100,000 on an unpaid invoice, was assigned to respondent in January 2004 to conduct discovery. While he served a notice of deposition, respondent took no further action on the case, failing to respond to the defendant’s discovery demands, allowing a deadline to take discovery to elapse without seeking an extension and failing to timely file a note of issue. To conceal his neglect, respondent misrepresented to the client and his firm that he had filed *312 a motion to compel the defendant to comply with discovery, casting blame upon the court for “the long delay” in deciding the nonexistent motion and, between February 2005 and late-April 2006, making false entries in billing records for time allegedly expended in connection with these activities.
In the fifth matter, respondent restrained a debtor’s bank account containing approximately $11,000 to satisfy a $40,000 judgment in favor of the client. However, respondent failed to effect a turnover of the funds and allowed the restraining notice to expire, with the result that the debtor removed the money from the account. Meanwhile, respondent led his firm to believe that he was actively pursuing the turnover of the funds.
Respondent’s firm only became aware of his neglect in August 2006 after being contacted by a client, after which respondent was informed that the firm would review all of his assigned cases on August 28, 2006. Respondent admitted his misconduct in all five matters on that date, and the firm subsequently terminated his employment and filed a complaint with the Disciplinary Committee. Its letter to the Committee noted that during the nine years he worked for the firm, respondent “had shown himself to be a dedicated, thoughtful attorney who performed most of his work in exemplary fashion,” concluding that the instances of client neglect “appear to be an aberration rather than the rule.” A subsequent letter to the Committee noted respondent’s efforts to rectify the consequences of his misconduct prior to his departure from the firm.
On this motion, the Committee contends that respondent’s persistent neglect of client matters, aggravated by his acts of deception to conceal his malfeasance, warrants a two-year suspension to impress upon the bar and the public that such misconduct will not be countenanced. Respondent, noting his ameliorative efforts, his unblemished disciplinary history, the aberrational nature of his misconduct, and his remorse, contends that a lengthy suspension is unnecessary to public protection because his misconduct will not be repeated and, furthermore, that a prolonged suspension would unfairly jeopardize his employment at his current law firm. Thus, he urges public censure or, at most, a three-month suspension.
This Court has consistently held that a persistent pattern of neglect warrants a substantial suspension from the practice of law (see Matter of O’Shea, 25 AD3d 203 [2005] [two-year suspension for neglect of four client matters, misrepresentations to the clients, good reputation, outstanding record of community ser *313 vice, some psychological problems, with one prior admonition]; Matter of Leavitt, 291 AD2d 37 [2002] [18-month suspension for neglect of three matters, misrepresentations to clients, initial misleading answers to Committee and two prior admonitions, one of which was for similar misconduct]; Matter of Gill, 225 AD2d 170 [1996] [three-year suspension for neglect of single matter, repeated misrepresentations to client regarding status of case and creation of fictitious litigation papers]). A substantial period of suspension has been imposed even where the respondent had no prior disciplinary history (e.g. Matter of Furtzaig, 305 AD2d 7 [2003]; Matter of Gill, 225 AD2d 170 [1996], supra). Moreover, respondent herein has no attendant psychological condition or personal circumstances that warrant mitigation of the sanction (cf. Matter of Rosenkrantz, 305 AD2d 13 [2003]; Matter of Siegel, 193 AD2d 181 [1993]). Finally, the adverse impact on legal employment is inherent in any suspension of significant length (see Matter of Leavitt, 291 AD2d at 39; Matter of Racer, 56 AD3d 125, 129 [2008]).
Accordingly, the Committee’s petition for an order confirming so much of the Hearing Panel’s determination as confirmed the Referee’s findings of fact and conclusions of law should be granted, so much of the aforesaid determination as recommended a sanction of six months’ suspension disaffirmed, respondent’s cross motion denied, and respondent suspended from the practice of law in the State of New York for a period of two years, effective 30 days after the date of this order and until further order of this Court.
Gonzalez, P.J., Tom, Mazzarelli, Andrias and Saxe, JJ., concur.
Respondent suspended from the practice of law in the State of New York for a period of two years, effective September 24, 2009 and until further order of this Court. Cross motion denied.